UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| ERICA L. CASTANEDA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-579 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On April 21, 2010, plaintiff filed her application for benefits. (Page ID 183-91). She claimed an August 9, 2007, onset of disability.[1] (Page ID 183). Her claim was denied on initial review. (Page ID 113-18). On March 29, 2012, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (Page ID 65-110). On May 3, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (Op., Page ID 49-59). On May 3, 2013, the Appeals Council denied review (Page ID 35-37), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, May 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ violated 20 C.F.R. § 416.927(c)(2) by (a) not giving controlling weight to the opinion of a treating physician, John D. Maskill, M.D., and (b) not balancing the *Wilson* factors and providing "good reasons" for the weight to Dr. Maskill's opinion.

(Plf. Brief at 1, docket # 14, Page ID 517). I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) because the ALJ's opinion falls short of satisfying the procedural requirement of providing "good reasons" for the weight given to the opinions of a treating physician.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833

(6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 21, 2010, the application date. (Op. at 3, Page ID 51). Plaintiff had the following severe impairments: "lumbar and sciatic left-sided pain, status post lipoma removal from soft tissue." (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 5, Page ID 53). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: she can lift from 8 to 10 pounds. She requires a sit/stand option, and she must avoid bending.

(*Id.*).  The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible.  (*Id.* at 5-9, Page ID 53-57).  The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because she was capable of performing her past relevant work as a telephone answering service operator.  (*Id.* at 9, Page ID 57).

Alternatively, the ALJ found that plaintiff was not disabled at step 5 of the sequential analysis.  (*Id.* at 10-11, Page ID 58-59).  Plaintiff was 35-years old when she filed her application for SSI benefits and 37-years-old as of the date of the ALJ's decision.  Thus, at all times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual.  (*Id.* at 10, Page ID 58).  Plaintiff has a limited education and is able to communicate in English.  (*Id.*).  The transferability of job skills was not material to a disability determination.  (*Id.*).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 3,000 jobs in Michigan that the hypothetical person would be capable of performing.  (*Id.*; *see* Page ID 107-08).  The ALJ found that this constituted a significant number of jobs.  Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (Op. at 10-11, Page ID 58-59).

**1.**

Plaintiff argues that the ALJ committed reversible error in his application of the treating physician rule to the opinions of Dr. Maskill.  The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. §§ 416.927(d)(1), (3);

*Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v.*

---

[2] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3).

*Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 48282 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff filed her application for SSI benefits on April 21, 2010.  She stated that she suffered a work-related lower back injury in August 2007, and many of the records presented in support of her claim for SSI benefits were generated in connection with her worker's compensation claim against her former employer.  Plaintiff testified that her family physician, Dr. Maskill, took her off work at K-Mart and that her employer ended up terminating her employment. (Page ID 84-85).  In addition, various records allude to a car accident in May 2008. (*see, e.g.*, Page ID 303, 308,

366, 412, 415, 428, 461, 476, 478, 480, 483, 486, 500). Plaintiff testified that she was involved in a rear-end collision and "ended up going to the hospital and found out that I had a fracture on my L3." (Page ID 80). Further, plaintiff testified, "I ended up having whiplash where I was in a neck brace for eight weeks" and "I was in a corset and worked with a TENS unit for quite some time." (Page ID 82). No accident-related x-ray records or other emergency room records were filed in support of plaintiff's claim for SSI benefits.

On April 8, 2010, a month before plaintiff filed her application for SSI benefits, she received treatment at Spectrum Health after reporting chest pain. She was described as a 35-year old female and "longtime ongoing smoker." (Page ID 328). Doctors offered a diagnosis of chronic tobacco abuse and mild chronic bronchitis. (Page ID 329). On April 15, 2010, Gregory A. Sandman indicated that plaintiff was having some symptoms of mild chronic bronchitis related to tobacco smoke. (Page ID 336).

On April 26, 2010, plaintiff reported to Dr. Maskill that she had suffered from chronic back pain for years. (Page ID 340). Dr. Maskill found that plaintiff was oriented and in no distress. Her deep tendon reflexes were normal. She had a limited range of motion in lumbar flexion and extension. She was able to heel and toe walk without weakness. Her muscle tone was normal. Maskill's diagnosis was chronic low back pain. (Page ID 342).

On August 12, 2010, plaintiff was examined by June Hillelson, D.O. (Page ID 412-15). Dr. Hillelson found that plaintiff was oriented in all three spheres and that her manner, affect and appearance were all appropriate. Plaintiff's extremities did not have clubbing, cyanosis or edema. Her motor strength was 5/5 in all muscle groups tested in the upper and lower extremities. Her sensory examination was intact to light touch. Deep tendon reflexes were 2/4 and symmetrical in

the upper and lower extremities. Plaintiff had no paravertebral muscle spasm. Straight leg raising tests were positive on the right at 80 degree and negative on the right at 90 degrees. (Page ID 414). Dr. Hillelson indicated that plaintiff should be able to lift 15 pounds, walk and climb stairs. She should alternate between sitting and standing, but should avoid squatting and stooping. Dr. Hillelson advised plaintiff to stop smoking cigarettes. (Page ID 415).

On November 9, 2010, plaintiff returned to Dr. Maskill. She stated that she had been seen in the emergency room "3X in the past month for back pain, then chest pain and then hands turning blue." (Page ID 428). Plaintiff stated that it was hard to catch her breath. Plaintiff's straight leg rasing tests were negative. She had no sensory loss. Her deep tendon reflexes were symmetrical. She was able to heel and toe walk without weakness. She had a limited range of motion in her lumbar spine with flexion and extension. Maskill's diagnosis of chronic back pain remained unchanged. (Page ID 430).

On December 8, 2010, Dr. Foster performed surgery to remove a fatty tumor from plaintiff's right hip. (Page ID 433). Plaintiff testified that she thought that she had discussed her post-surgical pain with Dr. Foster during a two-week checkup after surgery (Page ID 92), but she did not present any records from her treating surgeon in support of her claim for SSI benefits. She testified that she treats with Dr. Maskill and that he is aware of the pain that she has from the aforementioned surgery. (Page ID 92).

On January 25, 2011, plaintiff returned to Dr. Maskill and complained that since surgery she had constant numbness in her right leg and the pain was no better. (Page ID 433). Dr. Maskill found that plaintiff had normal reflexes, muscle tone. She had a limited range of motion in her lumbar spine with flexion and extension. Her straight leg raising tests were negative and she had

no sensory loss. She was able to toe and heel walk. Maskill's diagnosis of chronic low back pain remained unchanged. (Page ID 435).

On April 1, 2011, plaintiff returned to Spectrum Health and was treated by Tarulata Patel, M.D. Plaintiff reported that she had "started counseling." (Page ID 437). Plaintiff indicated that she had tried Prozac, Wellbutrin, Cymbalta and Zoloft in the past, but they had not worked. (*Id.*). Patel found that plaintiff was alert and oriented in all spheres. Her behavior, mood and affect were normal. Dr. Patel gave plaintiff a prescription for Celexa and encouraged her to continue with counseling. (Page ID 439). Correspondence from a social worker directed to the 61st District Court Probation Department on May 17, 2011, indicated that plaintiff had attended a total of five counseling sessions from March 14, 2011, through May 17, 2011. The counseling sessions involved stress and anger management. (Page ID 491).

In June 2011, plaintiff reported to Dr. Maskill that her depression was stable on Celexa and that her "panic [was] stable w[ith] xanax." (Page ID 442). Maskill indicated that plaintiff's back pain remained unchanged. (*Id.*). On August 10, 2011, Dr. Maskill gave a diagnosis of degenerative disc disease and indicated that he was making a referral to a spine center. (Page ID 448). On October 11, 2011, plaintiff reported a flare in her back pain after doing some house cleaning and watching her children. (Page ID 450). Plaintiff's results on examination remained essentially unchanged. Dr. Maskill offered a diagnosis of spinal stenosis of the lumbar region. (Page ID 452).

On December 28, 2011, Dr. Maskill signed a one-paragraph letter with no addressee stating the conclusions that plaintiff was "unable to work with meds and low back condition," and that she had been unable to work for 3 years, and was unable to drive distances to look for work. (Page ID 499). On January 25, 2012, Dr. Maskill signed a similar one-paragraph letter. He indicated that

plaintiff had chronic low back pain. He recommended that plaintiff avoid lifting over 15 pounds and twisting and bending. He stated that plaintiff was on multiple medications that would affect her ability to work, without further explanation. Similarly, his statement that plaintiff would require frequent position changes and periodic resting was not supported by any explanation. Maskill offered his opinion that plaintiff was "unable to work." (Page ID 498).

On March 20, 2012, plaintiff met with Barbara Rounds of Barbara Rounds and Associates, LLC. (Page ID 500). Ms. Rounds, an occupational therapist, recorded plaintiff's comments, performed a physical evaluation, and completed a residual functional capacity form. Ms. Rounds offered her opinion that plaintiff appeared to be functioning at the sedentary level of work. In addition, she offered conclusion that plaintiff did not appear to be capable of performing in full-time sustained employment: "If the client were required to work 40 hours per week, 8 hours per day in a competitive work environment she would most likely have serious limitations as to pace & concentration & need a sit-stand-rest option as symptoms dictate. The client appears best suited to part-time work as opposed to full time employment." (Page ID 504-05).

On April 12, 2012, Dr. Maskill wrote another one-paragraph letter expressing his opinion that plaintiff was unable to sustain employment:

> After reviewing Erica's functional capacity testing, it is my professional opinion that Erica Castan[e]da [], is not able to participate in gainful employment due to underlying medical problems. She would not be able to sustain employment on a consistent basis.

(Page ID 509). On the same date, he signed a one-sentence form labeled as a "physical capacities assessment" and faxed it to plaintiff's attorney. It stated: "I agree with the limitations set forth in the Residual Functional Capacity Evaluation by Barbara Rounds, OTR dated 3/20/12." (Page ID 510).

It was against the record summarized above that the ALJ considered the opinions of treating physician Maskill and dismissed them in a single paragraph:

> The claimant's primary care physician, John D. Maskill, M.D. provided several letters indicating the claimant was unable to work due to her chronic low back pain. He indicated the medications she uses would also affect her ability to work. He opined that she should avoid lifting over [] 15 pounds, twisting and bending. He stated she would require frequent position changes and periodic resting, and he opined that she was not employable in any functional capacity. He also agreed with the limitations set forth by occupational therapist Barbara Rounds, OTR, discussed below. (Exs 17F, 21F; 22F). These opinions are not consistent with the objective medical evidence or Dr. Maskill's own rather benign examination findings. Therefore, the undersigned gives them little weight.

(Page ID 56).

It is the ALJ's job, not the court's, to weigh the various competing medical opinions. *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. Mahon*, 499 F.3d at 509. The fatal flaw in the ALJ's opinion is not in the weight he found was appropriate for the various medical opinions. Most of the opinions emphasized by plaintiff are not medical opinions at all, but rather opinions on administrative issues such as disability, which are reserved to the Commissioner. The underlying progress notes do not record complaints of any significant side effects from medication. The record is almost completely devoid of the objective x-ray, CT scan, EMG, and MRI evidence normally found in a file where a claimant is claiming disability based on chronic lower back pain. The absence of medical records from Dr. Foster, plaintiff's treating surgeon, is inexplicable. Plaintiff did not require hospitalization for treatment of any mental impairment and the record of counseling is limited to a social worker's summary letter to a court's probation department. The deficiency in the ALJ's opinion is his failure to explain his findings in sufficient detail to satisfy the "good reasons" component of 20 C.F.R. § 416.927(c)(2). "To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than those

of treating physicians." *Gayheart v. Commissioner*, 710 F.3d at 379. However, the ALJ's opinion lacks the type of focused analysis of the treating physician's opinions necessary to survive scrutiny under the "good reasons" regulations as currently applied by the Sixth Circuit. *Id.* at 379-80. The ALJ's decision must be vacated, because he failed to provide "good reasons" for the weight he gave to the opinions of plaintiff's treating physician.

**2.**

Plaintiff asks the court to order the Commissioner to award SSI benefits. (Plf. Brief at 15, Page ID 531; Reply Brief at 4, Page ID 565). "[T]he court can reverse the [Commissioner's] decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *See Faucher v. Secretary of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*; *see Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); *see also Kalmbach v. Commissioner*, 409 F. App'x 852, 865 (6th Cir. 2011). Here, the Commissioner's decision is being reversed because the ALJ did not comply with the procedural requirement of providing "good reasons" for the weight given to the opinions of plaintiff's treating physician, not because the record strongly establishes plaintiff's entitlement to benefits.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings.


Dated: February 11, 2015          /s/ Phillip J. Green
                                  United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).